KENNETH G. JOHNSON (State Bar No. 059558)
JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
100 Van Ness Avenue, 19th Floor
San Francisco, CA  94102
Telephone:  (415) 431-5310
Facsimile:  (415) 431-2266

DOV M. GRUNSCHLAG (State Bar No. 042040)
CARTER, CARTER, FRIES & GRUNSCHLAG
44 Montgomery Street, Suite 2500
San Francisco, CA  94104
Telephone:  (415) 989-4800
Facsimile:  (415) 989-4864

Attorneys for Plaintiff
RICHARD J. STOEHR

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. STOEHR,<br><br>Plaintiff,<br><br>vs.<br><br>UBS SECURITIES, LLC, as SUCCESSOR-IN- INTEREST TO SBC WARBURG DILLON READ, INC. and DOES 1 through 50,<br><br>Defendants | Case No.:  C-08-0185-SC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>DATE          :          04/25/08<br>TIME          :          10:00 a.m.<br>COURTROOM          :          1, 17th Floor |

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

i

1
2

# TABLE OF CONTENTS

3    I.    INTRODUCTION ............................................................. 1

4    II.   MOTIONS TO DISMISS ARE DISFAVORED ............................................. 1

5    III.  THE ALLEGATIONS OF THE COMPLAINT VIEWED IN THE CONTEXT OF
6          THE FACTS ......................................................................... 2

7    IV.   THE COMPLAINT PLEADS AN ENFORCEABLE BARGAIN ........................ 4

8          A.    THIS IS NOT AN UNENFORCEABLE "AGREEMENT TO AGREE"............4

9          B.    THE AGREEMENT WAS "OPERATIVE" WHEN THE BREACH OCCURRED 7

10   V.    THE FACTS SUPPORT RECOVERY IN QUASI-CONTRACT ........................ 8

11   VI.   THE AGREEMENT IS NOT WITHIN THE STATUTE OF FRAUDS ................ 8

12   VII.  THE CLAIM HAS BEEN BROUGHT WITHIN THE FOUR-YEAR STATUTE OF
13         LIMITATIONS ................................................................. 9

14   VIII. CONCLUSION ................................................................. 9

15
16
17
18
19
20
21
22
23
24
25
26
27
28

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
*Stoehr v. UBS Securities, LLC* [U.S.D.C. (N.D. Cal.) No. C08-0185-SC]

1

**TABLE OF AUTHORITIES**

2

3

<u>CASES</u>

4   *Balisteri v. Pacifica Police Dept. 901 F. 2d 696, 699 (9th Cir. 1990)* ----------------------------------------- 1

5   *Beck v. American Health Group Internat. 211 Cal. App. 3d 1555, 1563 (1989)* ---------------------------- 5

6   *Cahill v. Liberty Mutual Ins. Co. 80 F. 3d 336, 338 (9TH Cir. 1996)* ----------------------------------------- 1

7   *California Lettuce Growers v. Union Sugar Co. 45 C. 2d 474, 483 (1955)* -------------------------------- 6

8   *Chaney v. Schneider 92 Cal. App. 2d 88 (1949)* ------------------------------------------------------------- 5

9   *Conley v. Gibson 355 U.S. 41, 45-46 (1957)* ---------------------------------------------------------------- 1,2

10  *Copeland v. Baskin Robbins USA 96 Cal. App. 4th 1251 (2002)* ----------------------------------------- 5

11  *Forde v. Vernbro Corp. 218 Cal. App. 2d 405 (1963)* ------------------------------------------------------ 6

12  *Gilligan v. James Develop. Corp. 108 F. 3d 246, 249 (9th Cir. 1997)* --------------------------------------- 1

13  *Goodwest Rubber Corp. v. Munoz 170 Cal. App. 3d 919, 921 (1985)* ----------------------------------- 5, 7

14  *Herman v. Los Angeles 98 Cal. App. 4th 484, 488 (2002)* --------------------------------------------------- 6

15  *Hollywood Motion Picture Equipment Co. v. Furer 16 C. 2d 184, 187 (1940)* ---------------------------- 8

16  *Lectrodryer v. SeoulBank 77 Cal. App. 4th 723, 726 (2000)* ------------------------------------------------ 8

17  *Monarco v. Lo Greco 35 C. 2d 621, 623 (1950)* ------------------------------------------------------------ 9

18

19

<u>STATUTES</u>

20  *California Civil Code §1624 (a)(1)* -------------------------------------------------------------------------- 8

21  *California Code of Civil Procedure §337* ------------------------------------------------------------------- 9

22  *Federal Rule of Civil Procedure 12(b)(6)* --------------------------------------------------------------------- 1

23  *Federal Rule of Civil Procedure 8(a)(2)* ------------------------------------------------------------------- 1, 2

24  *Uniform Commercial Code §2305* ---------------------------------------------------------------------------- 7

25

26

27

28

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

# I

## INTRODUCTION

This is a case of parties – plaintiff RICHARD J. STOEHR and defendant UBS SECURITIES LLC – who negotiated an agreement, put the agreement in writing, and thereafter acted in accordance with that agreement until it became time for defendant to honor its financial commitment. Defendant now contends that the agreement lacks specificity and that time has made the agreement stale and unenforceable. The contentions lack merit. The case cannot be disposed of on the pleadings.

# II

## MOTIONS TO DISMISS ARE DISFAVORED; THE COMPLAINT MUST BE CONSTRUED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

Defendant's motion is noticed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "failure to state a claim," but also argues for dismissal on the basis of Rule 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Neither ground has merit.

Several elementary principles apply in ruling on a 12(b)(6) motion. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson* 355 U.S. 41, 45-46 (1957). The complaint is construed in the light most favorable to the plaintiff, and the court must determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v Liberty Mutual Ins. Co.* 80 F. 3d 336, 338 (9th Cir. 1996). Dismissal is proper only where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.* 901 F. 2d 696, 699 (9th Cir. 1990). The motion is "viewed with disfavor and is rarely granted." *Gilligan v. James Develop. Corp.* 108 F. 3d 246, 249 (9th Cir. 1997).

The Court will note that the complaint was filed in state court in compliance with requirements of state law. Plaintiff used a form approved by the Judicial Council that authorizes a brief description of the claim. Defendant removed the action to federal court and, ironically, seeks to find fault with the brevity of the complaint. Although brief, the complaint serves the purpose of putting defendant on

1

notice of claims that would be more fully elaborated once the case moves into pre-trial discovery and trial. It satisfies Rule 8(a)(2) by giving "fair notice" of the claim. *Conley v Gibson*, *supra*, at 47-48.

Plaintiff's claim is simple and plainly stated: He had a written agreement (attached to the complaint) that obligated defendant to pay him a fee if defendant engaged in a transaction involving Thompson Creek. Defendant did engage in such a transaction and failed to pay plaintiff, to his damage. No more is needed as a matter of pleading.

Because defendant contends that under no circumstances may plaintiff prevail, it is not necessary for plaintiff to set forth the facts in support of his claim more fully than pleading rules require. Plaintiff's claim is based on facts that are fully consistent with the writing on which he relies. It is supported by cognizable legal theories, and not barred either by the statute of frauds or the statute of limitations. Plaintiff should not be precluded from proving the facts simply because defendant, feigning it does not understand the claim, would prefer to cut him off at the pass.

## III

### THE ALLEGATIONS OF THE COMPLAINT VIEWED IN THE CONTEXT OF THE FACTS

The writing dated October 31, 1997 ("Letter") grew out of a continuing seven-year relationship between the parties. Defendant was an investment bank in the business of underwriting or otherwise supporting either a public offering of stock or other transactions (mergers or acquisitions) that would generate money for client companies. When a transaction would occur, the bank would earn a fee that would be negotiated with the client. Plaintiff was a consultant with long experience in the mining industry (forty-eight (48) years in 1997, when he was seventy (70) years old). He knew the industry and had relationships with companies that were potential clients for defendant. He introduced the bank to potential opportunities, and was compensated by the bank, not the client.

As the writing states at the outset, plaintiff and defendant had already worked together for a number of years, and the purpose of defendant's letter was "to find a basis for making it attractive" for plaintiff to "continue working with us." (Letter, first paragraph). To that end, defendant made an offer, which consisted of several elements.

Jones, Clifford, Johnson & Johnson, LLP
Attorneys at Law

2

1    Defendant first offered terms of compensation to plaintiff for "the work we have done together

2    over the last several years…[that] opened up a number of opportunities" for the bank. (Letter, second

3    paragraph). This would be paid over the next two years, during which plaintiff would continue to

4    render consulting services. (Letter, third paragraph).

5    Next (Letter, fourth paragraph) defendant offered to compensate plaintiff in "additional

6    payments" that would be based on particular "situations" in which defendant would be engaged to

7    capitalize on opportunities that plaintiff introduced to the bank. The fee for "each such situation"

8    would not be able to be agreed upon in advance, because "we [*i.e.*, the bank] shall often not know at

9    the outset of a mandate [engagement] how we shall ultimately earn our revenue." However, the

10   criteria for the fee were understood, because the fee would "reflect, mainly, success fees and relative

11   contribution." Two potential fee situations had been "already identified": "possible transactions on

12   behalf of Amax Gold and Thompson Creek," a molybdenum producer.

13   In its use of the phrase "already identified," defendant recognized that something would be

14   owed if a transaction occurred. The parties would arrive at the amount in due course; they would

15   "need to agree on an estimate of additional payments that could be due to [plaintiff] in respect of"

16   these possible transactions, but such agreement was not yet essential – the opportunities had not yet

17   matured into engagements. This was consistent with how the parties had done business before: they

18   did not invariably agree on the compensation in advance of the services, witness the future payments

19   specified in Paragraph 2 of the letter compensating him for work plaintiff had already done that

20   "opened up" a number of opportunities. No deadline was placed on when the parties would need to

21   agree on the estimate of the fee, nor on when the opportunity would need to mature into a transaction.

22   Finally, defendant offered to consider making yet another payment to plaintiff, which,

23   however, would be at its "sole discretion and subject always to the overall performance" of the bank's

24   mining group. (Letter, fifth paragraph). This payment was not tied to any particular transaction;

25   rather, it would be in the nature of a bonus for "having made an exceptional contribution" to the

26   business.

27   Plaintiff accepted these terms by letter dated November 3, 1997, and proceeded to render

28   services. One of the two opportunities specified in the letter – Amax Gold – in fact matured into a

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

3

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

1   transaction; the bank earned its fee, reached agreement with plaintiff on the amount due to him, and

2   paid him.  The other opportunity – Thompson Creek – did not mature into a transaction for the bank

3   until later, and until it did, there was no occasion nor need to agree on a fee for plaintiff.  When the

4   molybdenum market improved, a transaction did take place.  Thompson Creek Metals Company was

5   sold to a company called Blue Pearl Mining Ltd. in 2006.  Defendant bank acted for Thompson Creek.

6   Plaintiff had no knowledge of the impending transaction, was not given an opportunity to discuss a fee

7   with defendant, and was not paid anything.  After his demand for a fee was rejected, this suit ensued.

8

9                                            IV

10   **THE COMPLAINT PLEADS AN ENFORCEABLE BARGAIN; THE**
   **MERITS OF THE CLAIM CANNOT BE ADJUDICATED AT THE PLEADING STAGE**

11

12   **A.      THIS IS NOT AN UNENFORCEABLE "AGREEMENT TO AGREE"**

13        Defendant's primary contention is this:  No matter the facts – that is to say, no matter

14   what services plaintiff rendered, no matter when he rendered them, no matter his role in introducing

15   Thompson Creek to the bank, no matter how the parties did business, no matter that they arrived at

16   plaintiff's fee for Amax Gold without prior agreement on it, no matter what their intentions were –

17   plaintiff may under no circumstances and under no theory recover any amount, because the parties did

18   not agree on the fee before plaintiff rendered the services.

19        This position mistakes and distorts the bargain these parties actually made, which is

20   shown not only by the writing – drafted by defendant with the intent of summarizing the parties'

21   agreement – but also evidencing their course of dealing and intent.  The nature of the bargain is a

22   matter for proof and cannot be adjudicated at the pleading stage.  The facts, when developed, will

23   support an enforceable bargain.

24        The essence of the bargain was that plaintiff would render services, and defendant

25   would accept the benefit of them, in the expectation that a *transaction-related fee* would be agreed

26   upon and paid when a *fee-related transaction* occurred.  Whether to pay a transaction-related fee was

27   not left to the discretion of the defendant; it had the "sole discretion" whether to pay a bonus, but with

28   respect to transactions, it was understood that a fee would be paid.  The fee would be agreed upon

1    when the bank knew how it would earn its "revenue," and the parties would agree on the amount

2    using established and identified factors such as success and relative contribution as well as the custom

3    and practice of the parties themselves and, potentially, that of the industry as a whole.  In reliance on

4    this agreement, and in accordance with the parties' course of dealing, plaintiff identified Thompson

5    Creek as having substantial value, and brought the opportunity of a possible transaction to defendant.

6    Once defendant capitalized on the opportunity, its payment obligation matured.

7          Contract law recognizes the enforceability of agreements of this nature.  Contrary to

8    defendant's argument, this is not an unenforceable "agreement to agree."  When parties make a mere

9    "agreement to agree," they understand that they have no deal – none at all – unless and until they do

10   come to agreement on all essential terms.  See, *e.g.*, *Beck v. American Health Group Internat.* 211

11   Cal. App. 3d 1555, 1563 (1989) (no binding agreement because parties intended that a formal

12   contract would be drafted by one party's corporate counsel, and that the draft would then be discussed

13   between them).  Even in such cases a court may enforce the agreement to the extent of obligating the

14   parties to *attempt in good faith* to come to terms, and if a party fails to do so, it may be liable for

15   damages incurred as a result of the breach.  *Copeland v. Baskin Robbins USA* 96 Cal. App. 4th 1251

16   (2002).  The true nature of the agreement in this case, however, is not an "agreement to agree," but an

17   agreement to pay an amount that, if the parties fail to agree on it, would be determined by the trier of

18   fact.

19          The fact that parties reserve an essential term for future agreement does not

20   automatically prevent the contract from being enforced.  Courts have enforced such contracts when it

21   was just and feasible to do so.  "The modern trend of the law is to favor the enforcement of contracts,

22   to lean against their unenforceability because of uncertainty, and to carry out the intentions of the

23   parties if this can feasibly be done."  *Goodwest Rubber Corp. v. Munoz* 170 Cal. App. 3d 919, 921

24   (1985).

25          For example, a lease provision calling for renewal at a rental "to be mutually agreed

26   upon" was enforced; when the parties failed to agree on the amount, the court fixed an amount that

27   was reasonable under the circumstances.  *Chaney v. Schneider* 92 Cal. App. 2d 88 (1949).  A contract

28   for the sale of goods, which fails to state the price, may be enforced where the reasonable intentions of

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

5

1    the parties could be ascertained and the price could be objectively determined in some manner, such as

2    usage of trade. *California Lettuce Growers v. Union Sugar Co.* 45 C. 2d 474, 483 (1955) (court

3    determines price based on parties' prior dealings). A contract to "meet and reach mutual agreement"

4    on the placement of displaced former employees was enforced, in part because at the time of the

5    agreement, the parties did not know what would happen with the individuals in question and therefore

6    could not have made the agreement more definite. *Herman v Los Angeles* 98 Cal. App. 4th 484, 488

7    (2002) ("There is nothing unlawful or even unusual about contracting parties agreeing to cross certain

8    bridges when they are reached.") A contract for the sale of corporate stock at "the amount of the fair

9    evaluation as agreed by the attorneys" was enforced after the attorneys failed to agree; the court

10   applied a standard of "fair value." *Forde v. Vernbro Corp.* 218 Cal. App. 2d 405 (1963).

11         These cases are directly applicable here. The parties did not agree on plaintiff's fee

12   with respect to Thompson Creek at the time of the writing, because it was premature to do so. They

13   contemplated that they would agree on the amount when the time was right for it: when a deal was

14   imminent, or done, and certainly when the bank's own fee, and the structure of its payment, became

15   known. This is what the parties did with respect to the Amax Gold transaction, which was in the

16   same category ("possible transaction") as Thompson Creek at the time the parties entered into the

17   contract. If they failed to agree, there are objective measures for the trier of fact to use in

18   determining damages: the parties' own seven years of past practice, and potentially industry

19   practice, based on factors that had already been agreed upon and used in other cases between the

20   same parties. And this question too – whether objective measures exist enabling the trier of facts to

21   determine the fee – cannot be decided from the face of the pleading, but is a matter for proof.

22         To the extent defendant claims that it had no contractual obligation to pay *any* amount,

23   this is not a position that can be sustained from the face of the writing alone, without consideration of

24   the parties' course of dealing – including their conduct in connection with Amax Gold – and intent.

25   The writing does not leave it to the defendant's unlimited discretion to decide whether any fee would

26   be payable; if it believes no fee is payable because the facts here do not warrant any fee, this is a

27   dispute to be resolved by the trier of fact.

28

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
*Stoehr v. UBS Securities, LLC* [U.S.D.C. (N.D. Cal.) No. C08-0185-SC]

1    The bargain that plaintiff alleges the parties made is the same as if they had expressed
2 it this way:  When the Amax Gold and Thompson Creek opportunities mature into fee-generating
3 transactions for the bank, plaintiff will receive a fee that will be in accordance with the parties'
4 previous dealings and the custom and practice in the industry.  This is a bargain that parties may
5 make and courts enforce.  See, *e.g.*, Uniform Commercial Code §2305: "The parties if they so intend
6 can conclude a contract for sale even though the price is not settled."  It is no different, in principle,
7 from options to purchase property at "fair market value," at "reasonable value," or at "current market
8 value," which are routinely enforced.  See, *e.g.*, *Goodwest Rubber Corp. v. Munoz*, *supra* , at 921.

9    Plaintiff recognizes that defendant advances a different view of their bargain.  The
10 dispute is at the core of the case, and it cannot be adjudicated on the pleadings.

11

12 **B.    THE AGREEMENT WAS "OPERATIVE" WHEN THE BREACH OCCURRED**

13    In the introduction section of its brief (2:23-3:6), defendant contends that the
14 agreement cannot support the complaint, because it "expired under its own terms in October of
15 1999," whereas the transaction for which a fee is claimed occurred in 2006.  This contention, like the
16 others, misreads the agreement and the complaint.

17    Nothing in the agreement on its face provides that the transaction for which a fee is
18 payable must occur before October of 1999, nor was this any part of the bargain in fact.  To call the
19 contract "inoperative," as defendant does (3:1), is to fundamentally misconstrue it.  The contract was
20 fully "operative" with respect to a Thompson Creek transaction that the bank would do.  Plaintiff
21 performed his part of the bargain in the expectation that payment would be made when a transaction
22 occurred.   Whether or not the consulting agreement was "renewed in October of 1999" has no
23 bearing on whether or not, as plaintiff alleges, he was entitled to a fee on a Thompson Creek
24 transaction whenever it occurred.  Defendant may contend otherwise, but that contention goes to the
25 merits, not to the sufficiency of the pleading.
26 ////
27 ////
28 ////

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

7

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

1

## V

2

## THE FACTS SUPPORT RECOVERY IN QUASI-CONTRACT

3      Even if an express contract were to fail, plaintiff would have a remedy in quasi-contract to

4  remedy unjust enrichment.  See, *e.g.*, *Lectrodryer v. SeoulBank* 77 Cal. App. 4th 723, 726 (2000)

5  (bank unjustly enriched when it refused to honor prepaid letter of credit and retained funds after

6  allowing letter to expire).  Plaintiff rendered services and conferred a benefit on defendant not as a

7  gratuitous volunteer, but with an expectation of payment that was shared by the defendant and

8  justified on the basis of their course of dealing.  This is sufficient to satisfy the elements for recovery

9  in quasi-contract: "receipt of a benefit and unjust retention of the benefit at the expense of another."

10 *Lectrodryer v. SeoulBank*, *supra*, at 726.  Under this theory, he would be entitled to be compensated

11 based on the reasonable value of his services, which is a question of fact that cannot be decided at the

12 pleading stage.

13

14

## VI

15

## THE AGREEMENT IS NOT WITHIN THE STATUTE OF FRAUDS

16      Defendant's statute of frauds defense is based on the faulty premise that the contract is an

17 "agreement that by its terms is not to be performed within a year from the making thereof."

18 California Civil Code §1624(a)(1).  The agreement says nothing of the sort.  Defendant's payment

19 obligation is to be performed when a Thompson Creek transaction occurs.  A transaction could have

20 occurred within a year from the making of the agreement.

21      An agreement that is capable of being performed within one year does not fall within the

22 statute of frauds.  The key words of the statute are "by its terms."  Only those contracts that *expressly*

23 *preclude* performance within a year require a writing.  Where no time is stated for performance, and

24 performance is possible within one year, the statute is satisfied.  See, *e.g.*, *Hollywood Motion Picture*

25 *Equipment Co. v. Furer* 16 C. 2d 184, 187 (1940) ("It is well settled that oral contracts invalidated by

26 the statute because not to be performed within a year include only those which cannot be performed

27 within that period.")

28

8

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

Moreover, plaintiff in this case, in reliance on defendant's promise to pay, changed his position (introduced the bank to the Thompson Creek opportunity), and defendant, having accepted the benefit, is unjustly enriched.  Hence, it is estopped to raise a statute of frauds defense.  See, generally, *Monarco v. Lo Greco* 35 C. 2d 621, 623 (1950).

Finally, as shown above, the agreement in fact is in writing, and contains all of the necessary material terms.

## VII

### THE CLAIM HAS BEEN BROUGHT WITHIN THE FOUR-YEAR STATUTE OF LIMITATIONS

The statute of limitations governing actions for breach of a written agreement is four years.  California Code of Civil Procedure §337.  The breach alleged is that after defendant concluded the Thompson Creek transaction in 2006, it failed to pay plaintiff.  The action was commenced in December 2007, well within the four-year statute.

Defendant's statute of limitations defense is based on the faulty premise that "the only breach Stoehr can plausibly allege…is the parties' failure to 'agree on an estimate' of additional payments…" (Motion, 10:21-23).  But defendant does in fact understand that the breach is the failure to pay, because at 9:17-19 of its brief, it states: "The only possible breach referred to in the complaint is UBS' failure to pay Stoehr any money based on a transaction UBS completed for Thompson Creek in 2006."  Defendant is correct – the breach alleged is the failure to pay, and that failure occurred in 2006, when the transaction was concluded.

## VIII

### CONCLUSION

The motion to dismiss ignores basic principles of pleading, fails to take account of the factual context within which the parties made their agreement, fails to read the writing as a whole, and contradicts established propositions of contract law.

1       The nature of the bargain made between the parties, and the merits of plaintiff's claim, cannot

2   be adjudicated on the face of the pleadings.  The facts, when developed, will support recovery by

3   plaintiff on a cognizable legal theory.  The complaint must be construed to state a claim and permit

4   plaintiff to proceed to prove his case.

5   DATED:  April __3__, 2008                 CARTER, CARTER, FRIES & GRUNSCHLAG

6

7

8                                   By _____

9                                     DOV M. GRUNSCHLAG

                                  Attorneys for Plaintiff

10                                    RICHARD J. STOEHR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONES, CLIFFORD, JOHNSON & JOHNSON, LLP
Attorneys at Law

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
*Stoehr v. UBS Securities, LLC* [U.S.D.C. (N.D. Cal.) No. C08-0185-SC]