1   KEKER & VAN NEST, LLP
    STUART L. GASNER - #164675
2   ERIC H. MACMICHAEL - #231697
    JENNIFER A. HUBER - #250143
3   710 Sansome Street
    San Francisco, CA 94111-1704
4   Telephone: (415) 391-5400
    Facsimile: (415) 397-7188
5
    Attorneys for Defendant
6   UBS SECURITIES LLC

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  RICHARD J. STOEHR,                    Case No. C-08-0185-SC

13                       plaintiff,       **DEFENDANT UBS SECURITIES LLC'S**
                                          **REPLY IN SUPPORT OF MOTION TO**
14        v.                              **DISMISS PURSUANT TO FEDERAL**
                                          **RULE OF CIVIL PROCEDURE 12(B)(6)**
15  UBS SECURITIES LLC AND DOES 1
    THROUGH 50,                           Date:     April 25, 2008
16                                        Time:     10:00 am
                         Defendants.      Dept:     Courtroom 15B
17                                        Judge:    Hon. Samuel Conti

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................2

    A.    Stoehr Fails to Show A Plausible Entitlement to Relief As Required
        By *Twombly* .................................................................................................2

        1.    The Court should disregard plaintiff's new allegations. ...............................2

        2.    Plaintiff relies on the wrong pleading standard. ...........................................3

        3.    *Twombly* requires a plaintiff to make factual allegations
            supporting each claim element and that, taken together, show a
            plausible entitlement to relief.........................................................................4

        4.    *Under Twombly*, plaintiff cannot rely on the possibility of
            future discovery of undisclosed facts to save its pleading. ...........................5

    B.    Stoehr's Purported Contract Is An Unenforceable "Agreement to
        Agree" ............................................................................................................6

        1.    Stoehr's attempt to rewrite the letter is unavailing. .....................................6

        2.    Stoehr's agreement is subject to the Statute of Frauds. ................................9

    C.    Stoehr's Complaint is Time-Barred ............................................................10

    D.    Stoehr's Fiduciary Duty Allegations Should Be Stricken From The
        Complaint......................................................................................................11

III.  CONCLUSION..................................................................................................11

1
## TABLE OF AUTHORITIES

2
### FEDERAL CASES

3

4
*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007)............................................................................................1, 3

5
*Cf. Car Carriers v. Ford Motor Co.,*
745 F.2d 1101 (7th Cir. 1984) .....................................................................................1

6

7
*Conley v. Gibson,*
355 U.S. 41 (1957)........................................................................................................3

8
*Jet Source Charter, Inc. v. Gemini Air Group, Inc.,*
2007 WL. 4144997 (S.D. Cal. November 19, 2007)...................................................10

9

10
*Papasan v. Allain,*
478 U.S. 265 (1986)......................................................................................................6

11
*Phillips v. County of Alleghenyi,*
515 F.3d 224 (3rd Cir. 2008) .......................................................................................3

12

13
*Schneider v. Cal. Department of Correctional,*
151 F.3d 1194 (9th Cir. 1998) .....................................................................................3

14
*Sonoma Foods, Inc. v. Sonoma Cheese Factor, LLC,*
2007 WL. 2122638 (N.D. Cal. July 23, 2007)............................................................11

15

16
*In re  Silicon Graphics, Inc. Sec. Litigation,*
970 F. Supp. 746 (N.D. Cal. 1997) .............................................................................3

17

### STATE CASES

18

19
*Ahmadzai v. Metully,*
2005 WL. 2219215 (E.D.Cal., September 12, 2005)...................................................10

20
*Autry v. Republic Production Inc.,*
30 Cal. 2d 144 (1947) ..................................................................................................8

21

22
*Avalon Products v. Lentini,*
98 Cal. App. 2d 177 (1950) ..........................................................................................7

23
*Beck v. American Health Group International, Inc.,*
211 Cal. App. 3d 1555 (1989) .....................................................................................9

24

25
*Berman v. Bromberg,*
56 Cal. App. 4th 936 (1997) .......................................................................................2

26
*Bustamante v. Intuit, Inc.,*
141 Cal. App. 4th 199 (2006) ......................................................................................8

27

28
*Cohn v. Levy,*
2007 WL. 2405810 (Cal. App. Aug. 24, 2007) ..........................................................11

ii

414722.01

*Copeland v. Baskin Robbins U.S.A.,*
96 Cal. App. 4th 1251 (2002) ...................................................................7

*Horsemen's Benevolent & Protective Association v. Valley Racing Association,*
4 Cal. App. 4th 1538 (1992) ...................................................................6

*Los Angeles Soda Works v. Southern California Aquazone Co.,*
103 Cal. App.105 (1930) ...................................................................8

*Oakland-Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.,*
197 Cal. App. 3d 1049 (1988) ...................................................................2

*Ribiero v. Dotson,*
187 Cal. App. 2d 819 (1960) ...................................................................6

*Roberts v. Adams,*
164 Cal. App. 2d 312 (1958) ...................................................................2, 7

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 8(a) ...................................................................1, 5, 6

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 2, 3, 5

Federal Rule of Civil Procedure 12(f) ...................................................................11

414722.01

1

## I.     INTRODUCTION

2     Plaintiff's opposition concedes the basis of UBS' motion to dismiss.  UBS moved to

3  dismiss the complaint on the grounds that, *inter alia*, plaintiff had failed to satisfy the pleading

4  standards under Federal Rules of Civil Procedure 8(a) and 12(b)(6), as interpreted recently by the

5  Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  In his

6  opposition, plaintiff Richard Stoehr:  (i) completely ignores *Twombly* by citing an outdated

7  pleading standard; and then (ii) tries to rewrite the complaint by producing a litany of new

8  factual allegations that are nowhere to be found in the complaint.  *Cf. Car Carriers v. Ford*

9  *Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be

10  amended by the briefs in opposition to a motion to dismiss.")  By arguing almost exclusively

11  from allegations and theories that have no basis in the complaint, Stoehr tacitly concedes that his

12  complaint is insufficient to satisfy the pleading standard in federal court.  That should be the end

13  of the matter.

14     Perhaps more significant though, it is now clear that no amendment to the complaint can

15  save Stoehr's defective claim for breach of contract.  Plaintiff admits, as he must, that

16  "agreements to agree" are unenforceable under California law.  (Opp'n at 5)  Given that the letter

17  upon which Stoehr relies for his breach of contract claim states, "We have already identified and

18  need to agree on an estimate of additional payment that could be due to you in respect of possible

19  transactions on behalf of Amax Gold and Thompson Creek"[1], it is difficult to imagine a case that

20  falls more squarely within this rule.  Stoehr's only attempt to get out from under California's

21  prohibition on indefinite agreements is to try and rewrite the terms of the letter, arguing that:

22
> The bargain that plaintiff alleges the parties made is the same as if they
> had expressed it this way:  When the Amax Gold and Thompson Creek

23
> opportunities mature into fee-generating transactions for the bank,
> plaintiff will receive a fee that will be in accordance with the parties'

24
> previous dealings and the custom and practice in the industry.  (Opp'n

25
> at 7.)

26     Plaintiff's attempt to rewrite the contract 10 years after the fact is telling even if it is

27  patently improper.  The language and interpretations plaintiff proposes are cut from whole cloth;

28

1

1    as quoted above, the document does not say anything close to what plaintiff suggests.  Moreover,

2    Stoehr's subjective belief about the meaning of the agreement is entirely irrelevant and

3    inadmissible.  *Oakland-Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.*, 197 Cal. App.

4    3d 1049 (1988) (declaration of attorney regarding client's intent in entering into contract was

5    inadmissible); *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997); (the undisclosed,

6    subjective intent of a party to a bilateral contract is irrelevant to, and therefore is inadmissible to

7    prove, the objective meaning of that contract's terms).  If a party could simply substitute his

8    interpretation or intent for the words of an agreement whenever a dispute arose, then contracts

9    would be reduced to nothing more than ink on parchment.  That is clearly not the law.

10        In the end, Stoehr's revisions to the contract cannot save the complaint.  It is now beyond

11    dispute that Stoehr has alleged, at best, the breach of an "agreement to agree", which is

12    "unenforceable in any form of action because it is a mere nullity." *Roberts v. Adams*, 164 Cal.

13    App. 2d 312, 315-316 (1958) ("It is firmly established as the law of California that failure to

14    specify or furnish a standard for determination of terms of payment … is fatal to [the contract's]

15    enforceability notwithstanding any desire of the courts to be liberal and helpful.")  This case

16    should therefore be dismissed with prejudice for lack of a valid contract.

17                            **II.             ARGUMENT**

18    **A.       Stoehr Fails to Show A Plausible Entitlement to Relief As Required By *Twombly***

19            **1.       The Court should disregard plaintiff's new allegations.**

20        Recognizing the fallacy with his own allegations, plaintiff's opposition brief relies on

21    several new factual averments that are completely untethered to his complaint.  Indeed, almost

22    the entirety of section III of plaintiff's brief is comprised of new allegations that go well beyond

23    the face of the complaint.  (Opp'n at 2 – 4; 6 – 7.)  While this can best be seen as an implicit

24    admission of the grounds for this motion, these new allegations, and any arguments that rely

25    upon them, should be disregarded by the Court.

26        In ruling on a Rule 12(b)(6) motion, courts may consider the allegations in the complaint

27    as well as documents referred to in the complaint that are central to plaintiff's claim.  *See In re*

28

----

[1] (Ex. A to Complaint) (emphasis added).

1  *Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997). However, facts newly

2  alleged in plaintiff's opposition papers are irrelevant to deciding a Rule 12(b)(6) motion and

3  should be disregarded by the Court. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197,

4  n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not*

5  look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition

6  to a defendant's motion to dismiss."); *see also 2 Moore's Federal Practice*, § 12.34[2] (Matthew

7  Bender 3d ed.) ("The court may not ... take into account additional facts asserted in a

8  memorandum opposing the motion to dismiss, because such memoranda do not constitute

9  pleadings under Rule 7(a)."). Consequently, in deciding this motion the Court should limit itself

10  to the four corners of the complaint.

11      **2.    Plaintiff relies on the wrong pleading standard.**

12      Plaintiff's opposition proceeds as though the leading Supreme Court case on the federal

13  pleading standard, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), had never been

14  decided. Plaintiff premises his opposition on the assertion that a claim can survive a motion to

15  dismiss under Federal Rule of Civil Procedure 12(b)(6) unless "it is beyond a doubt that the

16  plaintiff can prove no set of facts in support of [the] claim which would entitle him to relief."

17  (Opp'n at 1). But plaintiff is wrong: the Supreme Court expressly overruled the precise

18  pleading standard on which plaintiff's brief is predicated in last year's decision in *Twombly*.

19  Plaintiff ignores *Twombly* and instead relies on the overruled "no set of facts" dismissal standard

20  of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), disregarding the Supreme Court's instruction in

21  *Twombly* that this "phrase is best forgotten." (Compare Opp'n at 1 with *Twombly*, 127 S.Ct. at

22  1969); *see also Phillips v. County of Alleghenyi*, 515 F.3d 224, 230 (3rd Cir. 2008) ("It is clear

23  that the 'no set of facts' language may no longer be used as part of the Rule 12(b)(6) standard.")

24      Consequently, Stoehr's compromise that the complaint, "Although brief, ... serves the

25  purpose of putting defendant on notice" is of no moment.[2] While brevity is perhaps the soul of

26  ────────────

27  [2] Opp'n at 1 -2. Similarly, plaintiff's contention that his complaint satisfies "state law" is meaningless. (Opp'n at 1.) A Rule 12(b)(6) motion challenges the legal sufficiency of the pleading. The sufficiency of the pleading itself, however, is a procedural matter governed by the

28  Federal Rules of Civil Procedure.

414722.01

1   wit, it does not suffice to meet the pleading requirements for a multi-million dollar breach of

2   contract action in federal court.

3       **3.      *Twombly* requires a plaintiff to make factual allegations supporting each
                claim element and that, taken together, show a plausible entitlement to relief.**

4

5           Under *Twombly* and its progeny, a plaintiff must do more than simply put the defendant

6   on "notice of claims that would be more fully elaborated once the case moves into pre-trial

7   discovery and trial." (Opp'n at 2.) It must plead *factual* allegations that directly or inferentially

8   support each element of each asserted claim and that plausibly suggest, rather than are merely

9   consistent with, an entitlement to relief. *Twombly*, 127 S. Ct at 1966, 1969, 1974. A plaintiff

10  must state the "circumstances, occurrences, and events in support of the claim presented,"

11  making "either direct or inferential allegations respecting all the material elements necessary to

12  sustain recovery under some viable legal theory." *Twombly*, 127 S. Ct. at 1965 n.3, 1969

13  (internal quotation marks omitted).

14          As detailed in UBS' Opening brief, Stoehr has failed to allege, even conclusorily,

15  numerous essential elements of his claims. Notably, Stoehr has failed to allege any facts that

16  show:

17      ▪   His performance under the alleged contract; *e.g.,* what work did Stoehr perform
            with respect to Thompson Creek in 1997?

18
19      ▪   How Stoehr's alleged work, and the corresponding letters, from 1997 are in any
            way related to UBS' deal with Thompson Creek in 2006.
20
21      ▪   Stoehr's "relative contribution"[3] – if any – to the 2006 Thompson Creek deal.

22      ▪   UBS' obligation to pay Stoehr based on the 2006 Thompson Creek deal.

23      ▪   UBS' breach of some contractual duty.

24      ▪   Any damages proximately caused by said breach.

25          These deficiencies are fatal to Stoehr's ability to state a cognizable claim. These are all

26  essential elements of Stoehr's breach of contract claim, and his failure to properly allege even

27  *one* of them should result in dismissal. In the end, Stoehr factually alleges no more than that

28

414722.01

1    UBS completed a deal for Thompson Creek in 2006, and that <u>nine</u> years earlier he was involved

2    in discussions regarding an unspecified transaction involving Thompson Creek. Measured

3    against the elements of his claims, Stoehr's factual allegations, even if accepted as true, fall far

4    short of showing he is plausibly entitled to relief. Because Stoehr has failed to meet the

5    *Twombly* pleading standard, he should not be permitted to drag UBS through the burden and

6    expense of discovery. Indeed, the whole point of Rules 8 and 12(b)(6) is to prevent precisely

7    this kind of conduct.

8            **4.**      ***Under Twombly*, plaintiff cannot rely on the possibility of future discovery of undisclosed facts to save its pleading.**

9

10           Plaintiff argues that he should escape dismissal because *after discovery* he might be able

11    to allege unknown facts that might support his claim. (Opp'n at 2 (arguing that his claims

12    "would be more fully elaborated once the case moves into pre-trial discovery and trial.")) In

13    essence, plaintiff asks to be allowed to proceed to discovery now and to satisfy his burden to

14    plead cognizable claims later. But the Federal Rules of Civil Procedure do not work that way.

15           In *Twombly*, the Supreme Court anticipated and rejected an argument similar to that

16    plaintiff now makes. It held that a claim cannot survive dismissal "whenever the pleadings

17    le[ave] open the possibility that the plaintiff might later establish some 'set of [undisclosed]

18    facts' to support recovery." *Twombly*, 127 S. Ct. at 1968; *see also Phillips*, 515 F.3d at 230

19    (federal pleading standard does not "requir[e] judges to speculate about undisclosed facts"). The

20    Court explained, "It is no answer [to "the problem of discovery abuse"] to say that a claim just

21    shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery

22    process." *Twombly*, 127 S.Ct. at 1967 (internal quotation marks omitted). Thus, the fact that

23    plaintiff might be able to find facts in discovery that would allow it to plead a cognizable claim

24    that could survive a Rule 12(b)(6) challenge does not justify allowing him to take that discovery.

25    If it did, the Rule 12(b)(6) standard would be entirely circular.

26

27

28    ³ (Ex. A to Complaint).

414722.01

1    **B.    Stoehr's Purported Contract Is An Unenforceable "Agreement to Agree"**

2        **1.    Stoehr's attempt to rewrite the letter is unavailing.**

3           In addition to Stoehr's inability to meet the pleading standard under the federal rules, this

4    complaint should be dismissed with prejudice for the simple reason that Stoehr has not and

5    cannot allege the existence of a valid contract with UBS. Stoehr concedes that the parties had

6    not agreed on his entitlement to any additional fees for Thompson Creek at the time they

7    exchanged letters in 1997. (Opp'n at 4-5.) Stoehr further concedes that the failure to "come to

8    agreement on all essential terms" renders a contract void and unenforceable. (Opp'n at 5.)

9    Notwithstanding the clear import of these concessions, Stoehr argues that his contract is an

10   exception to the rule barring enforcements of "agreements to agree" because, in Stoehr's mind,

11   "[t]he true nature of the agreement in this case … is not an 'agreement to agree,' but an

12   agreement to pay an amount that, if the parties fail to agree on it, would be determined by the

13   trier of fact." (Opp'n at 5.) In the annals of wishful thinking, few statements rival that one.

14          In the first instance, it is the Court's responsibility – not the parties – to interpret the

15   relevant contract provisions. *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.*,

16   4 Cal. App. 4th 1538 (1992). And the Court need not accept plaintiff's "legal conclusion

17   couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Further,

18   because the subjective intent of a party to a bilateral contract is immaterial to its meaning, that

19   intent is "entirely inadmissible to show the meaning of the contract." *Ribiero v. Dotson*, 187 Cal.

20   App. 2d 819, 821 (1960); *see also Oakland Raiders, Ltd.*, 197 Cal. App. 3d at 1058 (declaration

21   of attorney regarding client's intent in entering into contract was inadmissible). Consequently,

22   plaintiff's creative spin on the "true nature" of this agreement is just that – spin.

23          The relevant provision of the October 31, 1997 letter is clear on its face: "We have

24   already identified and <u>need to agree</u> on an estimate of additional payment that <u>could</u> be due to

25   you in respect of <u>possible</u> transactions on behalf of Amax Gold and Thompson Creek."[4] This is

26   a quintessential "agreement to agree." Not only was the amount of any additional payment

27   unresolved, but the parties had not even agreed that Stoehr would be entitled to *any* fees from a

28

1   deal with Thompson Creek. The letter states that Stoehr "could" be entitled to fees, but the

2   determination would be "*sui generis*" and depend mainly on "relative contribution."[5] All of

3   those issues were left to the future agreement of the parties, putting this contract squarely within

4   the general rule in California that there is "no remedy for breach of an 'agreement to agree' in

5   the future." *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1256-57 (2002). That is

6   as far as the Court needs to go in declaring this contract void.

7           Plaintiff tries to argue that a trier of fact could imply a reasonable amount of payment

8   from "objective measures" such as "industry standards" – but the letter says otherwise. The

9   letter disclaims any objective standard by stating that the determination will be "*sui generis*," *i.e.*,

10  negotiated between the parties on a case-by-case basis. In these circumstances the Court cannot

11  save the contract by implying a reasonable term: "Where ... there has been no agreement upon

12  an essential element and the contract provides no means for the determination thereof but leaves

13  it to the future negotiation and agreement of the parties, the contract is void." *Avalon Products v.*

14  *Lentini*, 98 Cal. App. 2d 177, 179-80 (1950); *see also Roberts v. Adams*, 164 Cal. App. 2d 312,

15  315-316 (1958) ("It is firmly established as the law of California that failure to specify or furnish

16  a standard for determination of terms of payment ... is fatal to [the contract's] enforceability

17  notwithstanding any desire of the courts to be liberal and helpful.") The courts' power to imply a

18  reasonable price is thus limited to cases where the parties do not intend to leave it to future

19  negotiations, which is clearly not the case here. *Cf. Diamond Mining and Management, Inc. v.*

20  *Globex Minerals, Inc.*, 421 F. Supp. 70, 75 (N.D.Cal. 1976) ("Recognizing that the responsibility

21  for drafting contracts lies properly with the parties rather than with the courts, [California] state

22  law has long dictated that an agreement devoid of a material term, and thus indicating the need

23  for future agreement between the parties, is void.")

24          Furthermore, although the Court need not resolve this issue, it should be noted that there

25  are no allegations in this complaint from which the Court could, even if it wanted to, determine a

26  reasonable payment for Stoehr's alleged services. There are literally no allegations in the

27

28

---

[4] (Ex. A to Complaint) (emphasis added).

[5] *Id.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-0185-SC

414722.01

1    complaint establishing any discernible connection between, on the one hand, the reference to

2    Thompson Creek in Stoehr's 1997 letter, and on the other, the work UBS performed for

3    Thompson Creek in 2006. Further, there are no allegations that Stoehr made <u>any</u> contribution to

4    the 2006 Thompson Creek deal, nor are there any specifics regarding the supposed "past

5    practice" between the parties or the "industry practice" for determining payment. (Opp'n at 6.)

6    Consequently, Stoehr's contention that there are "objective measures" the Court could use is

7    measuring damages is pure fiction.

8          Plaintiff's opposition simply ignores the reality that several essential terms are missing

9    from the October 31, 1997 letter. Similarly, Plaintiff fails to come to grips with the unbroken

10   chain of authority cited in UBS' Opening Brief holding that "the parties had at best an

11   'agreement to agree,' which is unenforceable under California law." *Bustamante v. Intuit, Inc.*,

12   141 Cal. App. 4th 199, 213 (2006). In fact, to the extent the cases cited by plaintiff are

13   applicable, they actually *support* UBS' position. In *Herman v. County of L.A.*, for example, the

14   court affirmed that, "It is still the general rule that where any of the essential elements of a

15   promise are reserved for the future agreement of both parties, no legal obligation arises until such

16   future agreement is made." 98 Cal. App. 4th 484, 488 (2002) (internal quotations and citations

17   omitted). The court found this rule inapplicable, however, because the parties had agreed on all

18   of the essential terms of the contract, and as to the remaining terms, the parties agreed to submit

19   any disputes to mediation after engaging in a good faith effort to resolve. *Id.* By contrast, here

20   the parties left several essential terms unresolved, and the contract provides no means of

21   resolving disputes other than an "agreement to agree." Consequently, here the Court would be

22   forced to supply all of the missing terms, which runs contrary to California's stated policy that

23   "[t]he court may not imply what the parties will agree upon." *Autry v. Republic Production Inc.*,

24   30 Cal.2d 144, 151 (1947); *see also Los Angeles Soda Works v. Southern California Aquazone*

25   *Co.*, 103 Cal.App.105, 108 (1930) ("Since either party by the very terms of the promise may

26   refuse to agree to anything to which the other party will agree, it is impossible for the law to affix

27   any obligation to such a promise.")

28          Further, plaintiff cites *California Lettuce Growers* for the proposition that a court should

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-0185-SC

1   try to supply the missing term based on the parties' prior dealings. (Opp'n at 6). But what the

2   court actually held was that, "*Unless the parties intended to leave the determination of price to*

3   *future negotiations*, courts should make the necessary findings and set the price under the

4   applicable code provisions." 45 Cal. 2d 474, 482 (1955) (emphasis added).[6] Here, the parties

5   expressly intended to leave the determination of payment to future negotiations, stating that they

6   still needed to agree on plaintiff's entitlement to any fees, and the determination would be "*sui*

7   *generis*." For plaintiff to wait ten years and then pretend as if his entitlement to fees was never

8   in doubt strains credulity.

9         In short, neither plaintiff's nor UBS' research has unearthed a case where a court has

10   enforced the kind of "agreement to agree" at issue here. This is because California courts have

11   repeatedly held that a contract that leaves essential terms for future negotiation of the parties is

12   no contract at all. *See Beck v. American Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562

13   (1989) ("[A]n agreement for future negotiations [is] not the functional equivalent of a valid,

14   subsisting agreement.") This complaint should therefore be dismissed with prejudice for lack of

15   a valid contract.

16         **2.    Stoehr's agreement is subject to the Statute of Frauds.**

17         Plaintiff contends that his agreement with UBS "says nothing of the sort" about whether

18   it could completed within one year, thus exempting it from the Statute of Frauds. (Opp'n at 8.)

19   In point of fact, the letter attached to the complaint states, on the first page, that it was creating a

20   consultancy arrangement for "a period of **two years** commencing 1st October 1997."[7] Unless

21   plaintiff conjures a world in which two year services contracts can be completed within one year,

22   the agreement is subject to the Statute of Frauds, and, as explained in UBS' opening brief, the

23   October 31st letter does not satisfy the statute's requirements because it does not state all

---

24

25   [6] The court was analyzing a former provision of the Civil Code in connection with a contract for the sale of sugar beets, where the parties had historically computed price pursuant to a "net return formula" that reserved the determination of price until the seller could determine the

26   "average net selling price actually realized" during the year. *Id.* at 481 – 482. Because the parties had adopted a specific formula for computing price that was subject to auditing by an

27   accounting firm, the Court upheld the contract because it was clear that the parties did *not* intend to leave it to future negotiations. *Id.* at 482 – 483.

28   [7] Ex. A to the Complaint (emphasis added).

414722.01

1   material terms.

2   **C.    Stoehr's Complaint is Time-Barred**

3            Stoehr concedes that he has had no relationship with UBS since 1999 when their letter

4   agreement expired.  Nevertheless, he argues that his complaint is timely on the theory that UBS

5   breached the dormant agreement in 2006 when it failed to pay him money.  (Opp'n at 9.)

6   However, as argued in UBS' opening brief – to which Stoehr offers no response – that is not a

7   breach that is recognized under the contract.  (Opening Br. at 9 – 10.)   That would be a plausible

8   claim only if the letter guaranteed Stoehr some payment in the event UBS was to ever do any

9   deal with Thompson Creek.  But that is not what the letter says.  The letter merely states that the

10  parties would assess Stoehr's "relative contribution" to a transaction that was "possible" with

11  Thompson Creek **in 1997**, and would then "agree" on his entitlement, if any, to additional fees.[8]

12  There is no allegation, nor could there be, that UBS failed to perform *this* basic duty.  Further,

13  because there are no factual allegations in the complaint that Stoehr played any role or offered

14  any contribution to the 2006 Thompson Creek deal, UBS' failure to pay him some undisclosed

15  amount of money cannot constitute a breach.

16           Stoehr cannot resuscitate the complaint by pointing to a breach that is not recognized

17  under the contract.  *See Jet Source Charter, Inc. v. Gemini Air Group, Inc.*, 2007 WL 4144997,

18  at *3-4 (S.D. Cal., Nov. 19, 2007) (dismissing contract claim where contract attached to the

19  complaint contradicted plaintiff's theory of a contractual obligation owed by the defendant).

20  Based on the plain wording of the agreement, the only breach Stoehr can plausibly allege is the

21  parties' failure to "agree on an estimate of additional payments that could be due to [plaintiff] in

22  respect of possible transactions on behalf of Amax Gold and Thompson Creek."[9]  The latest this

23  breach could have occurred was October 1, 1999, when, according to the terms of the letter, the

24  parties' relationship expired without having agreed on Stoehr's entitlement to any additional

25  payments.  *See Ahmadzai v. Metully*, 2005 WL 2219215, at *3 (E.D.Cal., Sept. 12, 2005) (statute

26  of limitations for alleged breach began to run when parties discontinued their business

27  _____

28  [8] *Id.*

[9] Ex. A to Complaint (emphasis added).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. C-08-0185-SC

414722.01

1   relationship).  This claim is therefore time-barred.

2        Plaintiff's attempt to recover in quasi-contract does not change this outcome.[10]  The

3   statute of limitations for quasi-contractual claims begins to run immediately upon performance of

4   the service at issue.  *See 3 Witkin, Cal. Procedure* (4th ed. 1997) Actions § 508 ("When services

5   are performed at the request of another without a contract, the duty implied by law to pay for

6   them arises immediately on performance.  Hence the statute begins to run, and the plaintiff may

7   recover only for the value of services rendered within 2 years before the suit is filed."); *Cohn v.*

8   *Levy*, 2007 WL 2405810 at *5 (Cal. App. Aug. 24, 2007).  The complaint does not allege that

9   Stoehr performed any work after December 6, 2005 – much less any for which there would

10  ordinarily be an expectation of compensation – and therefore Stoehr's quasi-contract claim, like

11  the rest of the complaint, is entirely time-barred.

12  **D.    Stoehr's Fiduciary Duty Allegations Should Be Stricken From The Complaint**

13       Plaintiff's opposition concedes – by not disputing – that his untethered allegation for

14  breach of fiduciary duties should be dismissed, or stricken from the complaint pursuant to Fed.

15  R. Civ. P. 12(f).  As explained in UBS' Opening Brief, the complaint does not allege any *facts*

16  that could give rise to a fiduciary relationship between the parties; therefore, this unsupported

17  allegation should be stricken from the complaint unless and until plaintiff can properly allege the

18  existence of a fiduciary relationship.  *See, e.g., Sonoma Foods, Inc. v. Sonoma Cheese Factor,*

19  *LLC*, 2007 WL 2122638, *9 (N.D. Cal. July 23, 2007) (dismissing claim for breach of fiduciary

20  duties because plaintiff failed to "plead any facts which would give rise to a fiduciary duty based

21  upon a legal relationship between the parties.")

22              **III.    CONCLUSION**

23       The Court should grant UBS' motion to dismiss.  Stoehr offers only speculation,

24  conclusory statements, and wishful thinking in place of the plausible factual allegations *Twombly*

25  requires.  At bottom, Stoehr factually alleges no more than that UBS completed a deal for

26  Thompson Creek in 2006, and that <u>nine</u> years earlier Stoehr was involved in discussions

27

28  ---
    [10] The complaint does not include a request for recovery in quasi-contract.  This is an altogether
    new theory of recovery, raised for the first time in plaintiff's opposition papers, which the Court

11

1    regarding an unspecified transaction involving Thompson Creek.  Measured against the elements

2    of his claims, Stoehr's factual allegations, even if accepted as true, fall far short of showing he is

3    plausibly entitled to relief.  Under *Twombly*, Stoehr should not be allowed to drag UBS through

4    the burden and expense discovery on the off chance that undisclosed facts might allow him to

5    state a claim.    This is especially true where the alleged contract is a prototypical (and

6    unenforceable) "agreement to agree", reserving the determination of any additional payment for

7    future negotiations.  Because California law provides no remedy for the breach of an "agreement

8    to agree," this case should be dismissed with prejudice.

9

10

11    Dated:  April 11, 2008                                     KEKER & VAN NEST, LLP

12

13                                                              By:    _____/s/_____

14                                                                     ERIC H. MacMICHAEL
                                                                       Attorneys for Defendant
15                                                                     UBS SECURITIES LLC

16

17

18

19

20

21

22

23

24

25

26

27    should disregard.

28

414722.01