**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STOEHR, <br><br> Plaintiff, <br><br> v. <br><br> UBS SECURITIES, LLC, as successor-in-interest to SBC WARBURG DILLON READ, INC.; and DOES 1 THROUGH 50, <br><br> Defendants. | No. C-08-0185 SC <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

I. **INTRODUCTION**

This matter is before the Court on the Motion to Dismiss ("Motion") filed by the defendant UBS Securities, LLC ("UBS" or "Defendant").[1]  Docket No. 14.  The plaintiff Richard Stoehr ("Stoehr" or "Plaintiff") submitted an Opposition and UBS submitted a Reply.  Docket Nos. 16, 17.  For the reasons discussed herein, UBS's Motion is GRANTED and Stoehr's action is DISMISSED without prejudice.

---

[1] UBS is the successor in interest to SBC.  For the sake of uniformity, the Court uses UBS throughout the rest of the Order when referring to either SBC or UBS.

## II. BACKGROUND

Plaintiff filed his Complaint in the Superior Court of California, alleging breach of written contract and breach of fiduciary duties and seeking $2 million in damages. Notice of Removal, Docket No. 1, Ex. A ("Compl."). UBS subsequently removed the action to this Court. Id.

Plaintiff apparently had significant experience with the mining industry and worked in some capacity as a consultant for the mining division at UBS. Opp'n at 2. The present action arose out of two letters exchanged between UBS and Plaintiff in October and November of 1997. Compl. Ex. A. Plaintiff, in essence, asserts that these letters created a binding contract whereby UBS agreed to pay Plaintiff an undetermined sum if UBS were to use Plaintiff's services for various transactions. In particular, Plaintiff alleges that UBS agreed to pay him a fee should UBS transact with a company called Thomson Creek. Id. The relevant language from UBS's letter to Plaintiff states:

> We and you should seek to identify and agree, as early as practicable, situations that might qualify for additional payments and estimate the approximate additional amount. Each such situation will be sui generis (we shall often not know at the outset of a mandate how we shall ultimately earn our revenue) and will reflect, mainly, success fees and relative contribution. We can go through some illustrative examples of how this might work in relation to advisory and equity business. We have already identified and need to agree on an estimate of additional payments that could be due to you in respect of possible transactions on behalf of Amax Gold and Thompson Creek.

Id.

According to Plaintiff's Opposition (but not his Complaint), UBS, subsequent to this letter, was involved in a transaction relating to Amax Gold. Opp'n at 4. According to the Opposition, Plaintiff received a fee from this transaction. Id. Plaintiff does not specify when this transaction occurred, what services he performed, or how a fee agreement was reached. In his Complaint, Plaintiff alleges that in 2006, UBS completed a transaction involving Thomson Creek. Plaintiff, based on the above-cited letter, requested a fee from UBS for this transaction. When UBS refused, Plaintiff sued in state court, seeking damages of $2 million. Plaintiff, in his Opposition, provides a concise statement of his claim: "Plaintiff's claim is simple and plainly stated: He had a written agreement (attached to the complaint) that obligated defendant to pay him a fee if defendant engaged in a transaction involving Thomson Creek. Defendant did engage in such a transaction and failed to pay plaintiff, to his damage." Opp'n at 2.

### III. **LEGAL STANDARD**

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.

3

1955, 1974 (2007).[2]  For purposes of such a motion, the complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Everest & Jennings, Inc. v. Am. Motorists Ins. Co.</u>, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of the plaintiff.  <u>Id.</u>  Unreasonable inferences or conclusory legal allegations cast in the form of factual allegations, however, are insufficient to defeat a motion to dismiss.  <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).  Finally, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court <u>may</u> <u>not</u> look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."

---

[2]  In its Reply, UBS makes much of the fact that Plaintiff did not cite <u>Twombly</u> in the legal standard section of his Opposition.  UBS states:
> Plaintiff premises his opposition on the assertion that a claim can survive a motion to dismiss under . . . 12(b)(6) unless "it is beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief." (Opp'n at 1) [citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)].  But plaintiff is wrong: the Supreme Court expressly overruled the precise pleading standard on which plaintiff's brief is predicated in last year's decision in <u>Twombly</u>.  Plaintiff ignores <u>Twombly</u> and instead relies on the overruled "no set of facts" dismissal standard of <u>Conley</u> . . . .

Reply at 3.  UBS would have been well advised to pay this attention to its own Motion.  In the second sentence of its legal standard, it quotes the very language from <u>Conley</u> that was overruled by <u>Twombly</u> and that provoked UBS's criticism of Plaintiff.  Mot. at 5.  Moreover, nowhere in the legal standard of UBS's Motion does it even acknowledge <u>Twombly</u>.  <u>Id.</u>

4

Schneider v. Cal. Dept. of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

## IV. DISCUSSION

Plaintiff has failed to allege the necessary facts to state a claim for relief under a theory of breach of contract or breach of fiduciary duty.

### A. Breach of Contract

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (Ct. App. 1990).

> Ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms alleged to their legal effect. But if the instrument is ambiguous, the pleader must allege the meaning he ascribes to it. Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is sufficient to sustain a cause of action for breach.

Beck v. Am. Health Group Int'l, Inc., 211 Cal. App. 3d 1555, 1561 (Ct. App. 1989) (internal quotation marks, citations, and alterations omitted). Under these circumstances, where the interpretation of the contract does not turn on the credibility of

5

extrinsic evidence, it is "solely a judicial function to interpret a written instrument." Id. (internal quotation marks omitted).

In the present case, Plaintiff's Complaint "merely incorporated a copy of the attached writing by reference, leaving it to speak for itself." Id. at 1562. The Court must therefore construe the language and determine whether the writing constitutes a contract. See id.

"Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties." Smissaert v. Chiodo, 163 Cal. App. 2d 827, 830 (Ct. App. 1958). "In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole." Id. "The intent of the parties is to be determined by an objective standard and not by the unexpressed state of mind of the parties." Id. "Where any of the terms are left for future determination . . . there is no binding contract until this is done." Id. at 830-31. "The objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation." Beck, 211 Cal. App. 3d at 1562.

The very first sentence of the relevant paragraph in UBS's letter indicates that there was no binding contract. The sentence states: "We and you should seek to identify and agree, as early as practicable, situations that might qualify for additional payments and estimate the approximate additional amount." Compl. Ex. A. The final sentence of this paragraph is equally instructive: "We have already identified and need to agree on an estimate of additional payments that could be due to you in respect of

6

1  possible transactions on behalf of Amax Gold and Thompson Creek."
2  <u>Id.</u>  Both sentences explicitly reference the need to agree, at
3  some point in the future, on payment amounts for transactions
4  that, at the time of the letter, were still mere possibilities.
5  "Where . . . there has been no agreement upon an essential element
6  and the contract provides no means for the determination thereof
7  but leaves it to the future negotiation and agreement of the
8  parties, the contract is void."  <u>Avalon Prod. v. Lentini</u>, 98 Cal.
9  App. 2d 177, 180 (Ct. App. 1950).

10  Given the language of the alleged contract, it appears that
11  "the letter did not constitute a binding contract, but was merely
12  'an agreement to agree' which cannot be made the basis of a cause
13  of action."  <u>Beck</u>, 211 Cal. App. 3d at 1563.  Plaintiff has failed
14  to allege "enough facts to state a claim to relief that is
15  plausible on its face" for breach of contract.  <u>Twombly</u>, 127 S.
16  Ct. at 1974.  Plaintiff's breach of contract claim is therefore
17  DISMISSED without prejudice.

18  **B.   Breach of Fiduciary Duties**

19  "[B]efore a person can be charged with a fiduciary
20  obligation, he must either knowingly undertake to act on behalf
21  and for the benefit of another, or must enter into a relationship
22  which imposes that undertaking as a matter of law."  <u>Comm. on</u>
23  <u>Children's Television, Inc. v. Gen. Foods Corp.</u>, 35 Cal. 3d 197,
24  221 (1983) (superceded on other grounds by statute, as recognized
25  in <u>Californians For Disability Rights v. Mervyn's, LLC</u>, 39 Cal.
26  4th 223, 228 (2006)).  "Although parties may create fiduciary
27  relationships by contract, mere contractual relationships, without

28                                    7

1  more, do not give rise to fiduciary relationships." <u>Sonoma Foods,
2  Inc. v. Sonoma Cheese Factory, LLC</u>, No. C 07-00554 JSW, 2007 WL
3  2122638, at *9 (N.D. Cal. July 23, 2007) (internal quotation marks
4  and alterations omitted).

5  Plaintiff has plead no facts that would indicate that UBS
6  agreed in the alleged contract at issue to undertake a fiduciary
7  relationship and give priority to the interests of Plaintiff. The
8  Court therefore GRANTS UBS's Motion and DISMISSES without
9  prejudice Plaintiff's claim for breach of fiduciary duty.

11  **V.    CONCLUSION**

12  For the foregoing reasons, Defendant's Motion is GRANTED and
13  Plaintiff's action is DISMISSED without prejudice. Plaintiff is
14  granted 30 days in which to file an amended complaint. If no
15  amendment is filed within said period, the case will be dismissed
16  with prejudice.

19  IT IS SO ORDERED.

21  Dated: July 10, 2008

23  UNITED STATES DISTRICT JUDGE

8